# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| BRADLEY HARDIN, Individually and on Behalf of All Others Similarly Situated,<br><br>v.<br><br>THE TEXIAN GROUP, INC. | Case No. 4:22-cv-00111 |

## COLLECTIVE ACTION COMPLAINT

### SUMMARY

1. Plaintiff Bradley Hardin ("Hardin") brings this lawsuit to recover unpaid overtime wages and other damages under the Fair Labor Standards Act ("FLSA") against Defendant The Texian Group, Inc. ("Texian").

2. Hardin and similarly situated inspectors regularly worked for Texian in excess of 40 hours each week.

3. These workers never received overtime for hours worked in excess of 40 hours in a single workweek.

4. Instead, these workers were paid a day rate. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

5. The class of similarly situated employees is properly defined as:

> **All inspectors employed by Texian who were paid a day-rate with no overtime at any point in the past 3 years (the "Putative Class Members").**

### JURISDICTION AND VENUE

6. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Texian is

incorporated in Texas with corporate headquarters in this district and division in Clear Lake, Texas.[1]

## THE PARTIES

8. Hardin is a Texas resident.

9. Hardin performed work for Texian as a coating inspector and utility inspector from approximately May 2016 through August 2020, including in Texas.

10. Throughout his time with Texian, he was paid a day-rate with no overtime compensation.

11. Hardin's consent to be a party plaintiff is attached as Exhibit A.

12. Texian employed Hardin and the Putative Class Members.

13. The Texian Group, Inc. is a Texas corporation and may be served with process by serving its registered agent Katherine Borsellino, 2515 B Nasa Parkway, Suite 4, Seabrook, Texas 77586.

## COVERAGE UNDER THE FLSA

14. For at least the past three years, Texian was an employer within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d).

15. For at least the past three years, Texian has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

16. For at least the past three years, Texian has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working

---

[1] https://www.texiangroup.com/ (last visited January 7, 2022).

on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has and has had an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

17. For at least the past three years, Hardin and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

## FACTS

18. Texian "is a premier multi-discipline pipeline field services firm specializing in pipeline inspection and safety inspection."[2]

19. Texian's services include "construction, pipeline, tank, and specialized inspection" as well as "safety inspection."[3]

20. Texian "provides a full range of pipeline inspection services to include new construction, maintenance rehab, compressor/pump stations, and other oil & gas related facilities."[4]

21. Texian staffs its employees to "Pipeline companies [who] use inspection services to ensure their projects are constructed and repaired in accordance with all applicable codes, specifications, and permits."[5]

22. Texian employed Hardin and the Putative Class Members and staffed them to work on oil and gas pipelines for Texian's clients.

23. Texian's clients' entire industry is related to the exploration, production, and transportation of oil and gas goods.

24. Texian's clients build, repair, and/or maintain pipelines that enable the movement of goods, specifically oil and gas, across state lines as a stream of interstate commerce.

---

[2] https://www.texiangroup.com/ (last visited January 7, 2022).
[3] *Id.*
[4] https://www.texiangroup.com/inspection.php (last visited January 7, 2022).
[5] *Id.*

25. Through Hardin's and the Putative Class Members' job duties of inspecting elements of the pipeline infrastructure, Hardin and the Putative Class Members were responsible for the safe transportation of oil and gas.

26. The United States Department of Transportation regulates pipeline and safety maintenance, including through the Pipeline and Hazardous Materials Safety Administration

27. The Pipeline and Hazardous Materials Safety Administration sets federal standards that pipelines must comply with in their operation.

28. Hardin and the Putative Class Members' duties included ensuring pipelines are constructed and/or repaired in accordance with established standards, procedures, plans, and regulations.

29. Hardin and the Putative Class Members assisted Texian's clients in meeting all operation requirements set forth by the Pipeline and Hazardous Materials Safety Administration on a federal level and by related state agencies.

30. If Hardin and the Putative Class Members did not perform their jobs correctly, the pipelines could rupture or explode, causing serious personal, environmental, and financial harm.

31. The inspection services Hardin and the Putative Class Members provided to Texian and its clients were necessary to keep the intra- and interstate flow of oil and gas.

32. Hardin and the Putative Class Members' work was centered on ensuring the safe transport of oil and gas to its ultimate destination.

33. "The primary objective of [Texian's] inspection services is to ensure that the integrity of [Texian's] clients' pipeline is not compromised."[6]

---

[6] https://www.texiangroup.com/inspection.php (last visited January 11, 2022).

34. Texian and its clients rely on Hardin and the Putative Class Members to inspect pipelines and ensure the safe transportation of goods in interstate commerce.

35. Without the work of pipeline inspectors like Hardin and the Putative Class Members, the oil and gas pipelines of Texian's clients would not exist to transport oil and gas interstate.

36. At all relevant times, Hardin and the Putative Class Members were actively and directly engaged in the transportation of oil and gas across state lines.

37. Hardin and the Putative Class Members worked on pipelines that crossed state lines.

38. Hardin and the Putative Class Members traveled across state lines for the furtherance of their work for Texian and its clients.

39. Hardin and the Putative Class Members performed work that directly progressed the movement of goods, specifically oil and gas, across state lines.

40. Hardin and the Putative Class Members performed work directly affecting the channels of commerce.

41. Hardin and the Putative Class Members were employed directly in the channels of commerce.

42. At all relevant times, Hardin and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

43. Texian employed Hardin and staffed him to work on oil and gas pipelines and facilities operated by Texian's customers.

44. Texian hired Hardin in approximately May 2016.

45. Texian paid Hardin a day rate.

46. Specifically, Hardin and other similarly situated inspectors were paid a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek)

and failed to provide them with overtime pay for hours that they worked in excess of 40 hours in a workweek.

47. Hardin worked for Texian from May 2016 – August 2020 as a coating and utility inspector on several projects across Texas, Alabama, Louisiana, Mississippi, Connecticut, and Massachusetts.

48. As a coating inspector and utility inspector, Hardin's primary job duties included inspecting the coating on oil and gas pipelines, storage facilities, and other projects, mainline coding, tie-ins, and dirt work.

49. Texian paid Hardin and Putative Class Members a day rate regardless of project or location.

50. While exact job titles and job duties may differ, Texian subjected Putative Class Members to the same or similar illegal pay practice for similar work.

51. Hardin reported the hours (or days) he worked to Texian on a regular basis.

52. Texian required Hardin to work over 40 hours in a week.

53. Hardin was scheduled to work 10-hour minimum shifts, for as many as 6 to 7 days a week. However, Hardin regularly worked more than 10 hours each day.

54. Texian kept accurate records of the days, but not hours, of Hardin's work.

55. Hardin did not have any supervisory duties.

56. Hardin did not hire for fire employees.

57. Hardin did not exercise discretion and judgment as to matters of significant.

58. To the contrary, Hardin worked with his hands.

59. Hardin was a blue-collar worker.

60. Hardin performed manual labor.

61. Hardin used hand tools on pipelines.

62. Hardin worked in the elements and would become dirty as a result of his work.

63. Hardin worked in dangerous conditions.

64. Pipelines have the potential to explode.

65. Pipelines can be dangerous.

66. Hardin did not manage a business unit.

67. Hardin could not make decisions as to matters of significance that would impact overall business operations.

68. Hardin's decisions were limited to routine and manual tasks surrounding pipeline inspections for Texian.

69. Hardin was prohibited from deviating from Texian's quality standards.

70. Texian was Hardin's employer for purposes of the FLSA.

71. Hardin was not an exempt employee.

72. Hardin did not receive a guaranteed salary from Texian.

73. Texian's day-rate payment scheme violates the FLSA.

74. Texian was aware of the overtime requirements of the FLSA.

75. Texian nonetheless failed to pay certain day-rate employees, such as Hardin and the Putative Class Members, overtime.

76. Texian's failure to pay overtime to Hardin and similarly situated inspectors was, and is, a willful violation of the FLSA.

### FLSA VIOLATIONS

77. Hardin incorporates the preceding paragraphs by reference.

78. As set forth herein, Texian violated the FLSA by failing to pay Hardin and the Putative Class Members overtime at 1 and ½ times their regular rate of pay, for hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a).

79. Texian knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Hardin and the Putative Class Members overtime compensation.

80. Texian's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

81. Hardin alleges Texian's day-rate policy is a per se violation of the FLSA. *Hewitt v. Helix Energy Sols. Grp., Inc.*, 15 F.4th 289 (5th Cir. 2021) (a day-rate is not a salary).

82. Texian's pay policy denied Hardin and the Putative Class Members overtime compensation at the legal overtime rates required by the FLSA.

83. Texian owes Hardin and the Putative Class Members overtime wages equal to 1 and ½ their regular rates for each overtime hour worked during the last three years.

84. Texian knew, or should have known, these workers were being paid a day rate. It knew or showed reckless disregard for whether its failure to pay overtime violated the FLSA. Its failure to pay overtime to Hardin and the Putative Class is willful.

85. Due to Texian's FLSA violations, Hardin and the Putative Class Members are entitled to recover from Texian for their unpaid overtime compensation, liquidated damages, reasonable attorney fees, costs, and expenses of this action.

86. The improper pay practices at issue were part of a continuing course of conduct, entitling Hardin and Putative Class Members to recover for all such violations, regardless of the date they occurred.

### TEXIAN RECKLESSLY DISREGARDED ITS FLSA OBLIGATIONS

87. Texian was aware of the requirements of the Fair Labor Standards Act.

88. Texian did not investigate the legality of its classification of Hardin and the Putative Class Members as exempt from overtime pay.

89. Texian did not review the job descriptions of Hardin and the Putative Class Members.

90. Texian did not conduct any time studies of the exempt and non-exempt job duties performed by Hardin and the Putative Class Members.

91. Texian was aware of Hardin and the Putative Class Members' job duties.

92. Texian was aware of Hardin and the Putative Class Members' primary duties.

93. Texian was aware of Hardin and the Putative Class Members' hours worked.

94. Texian was aware Hardin and the Putative Class Members worked in excess of forty hours in a workweek.

95. Texian recklessly disregarded its FLSA obligations and misclassified Hardin and the Putative Class Members as exempt from overtime pay.

**COLLECTIVE ACTION ALLEGATIONS**

96. Hardin incorporates all previous paragraphs and alleges that the illegal pay practices Texian imposed on Hardin were likewise imposed on the Putative Class Members.

97. Texian's illegal day-rate payment policy extends beyond Hardin.

98. Texian employed Hardin and each member of the Putative Class.

99. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA.

100. Many of these employees have worked with Hardin and the Putative Class Members have reported that they received a day rate with no guaranteed salary and no overtime. Even if their precise job titles may differ, the Putative Class Members are all victims of Texian's unlawful compensation practices and are similarly situated to Hardin in terms of pay provisions and employment practices.

101. Texian paid Hardin the Putative Class Members a uniform day-rate compensation plan, regardless of their job title, job duties, locations worked, project, or supervisor.

102. The Putative Class Members are similarly situated based on Texian's common pay policy.

103. The Putative Class Members are similarly situated based on Texian's common practices applied to all Putative Class Members.

104. The Putative Class Members are similarly situated because Texian employed them, staffed them to their clients, and paid these workers a day rate regardless of their job titles, duties, project, or location.

105. The Putative Class Members are similarly situated because their primary job duties included the inspection and operation of oil and gas pipelines, storage facilities, and other construction and production projects as needed.

106. The workers impacted by Texian's day-rate pay scheme should be notified of this action and given the chance to join pursuant to 29 U.S.C. § 216(b).

107. Therefore, the class of similarly situated workers is properly defined as:

> **All inspectors employed by Texian who were paid a day-rate with no overtime at any point in the past 3 years (the "Putative Class Members").**

108. Putative Class Members did not have any supervisory duties.

109. Putative Class Members did not hire or fire employees.

110. Putative Class Members did not exercise discretion and judgment as to matters of significant.

111. To the contrary, Putative Class Members worked with their hands.

112. Putative Class Members performed manual labor.

113. Putative Class Members used hand tool on pipelines.

114. Putative Class Members worked in the elements and would become dirty as a result of their work.

115. Putative Class Members worked in dangerous conditions.

116. Putative Class Members did not work in an office.

117. Putative Class Members did not manage a business unit.

118. Putative Class Members could not make decisions as to matters of significance that would impact overall business operations.

119. Putative Class Members' decisions were limited to routine and manual tasks surrounding oil and gas pipelines and facilities operated by Texian's clients.

120. Putative Class Members were required to follow Texian's policies and procedures.

121. Putative Class Members reported to Texian on a regular basis.

122. Texian determined the pay practice through which all Putative Class Members are compensated.

123. Texian did not guarantee the Putative Class Members a salary.

124. Texian did not provide the Putative Class Members overtime pay.

125. Texian employed the Putative Class Members for purposes of the FLSA.

126. Texian kept accurate records of the days each Putative Class Member worked.

127. Texian required the Putative Class Members to report their time, or at least days, worked.

128. The Putative Class Members were blue collar workers.

129. The Putative Class Members were not guaranteed a salary.

130. Texian cannot demonstrate that the Putative Class Members were paid on a salary basis in accordance with the FLSA.

131. The Putative Class Members were not exempt under any white-collar exemption.

## JURY DEMAND

132. Hardin demands a trial by jury.

## RELIEF SOUGHT

133. WHEREFORE, Hardin prays for judgment against Texian as follows:

   a) An Order designating the case as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all similarly situated individuals with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

   b) For an Order appointing Hardin and his counsel to represent the interests of the Putative Class Members;

   c) For an Order finding Texian is liable to Hardin and the Putative Class Members for unpaid overtime owed under the FLSA, as well as liquidated damages in an amount equal to their unpaid compensation;

   d) For an Order awarding attorneys' fees, costs, and pre- and post-judgment interest at the highest available rates; and

   e) For an Order granting such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: */s/ Andrew W. Dunlap*
**Michael A. Josephson**
Texas Bar No. 24014780
Federal ID 27157
**Andrew W. Dunlap**
Texas Bar No. 24078444
Federal ID 1093163
**Rochelle D. Prins\***
Arizona ID 031393
**JOSEPHSON DUNLAP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
rprins@mybackwages.com
*\*Application Pro Hac Vice Forthcoming*

- 13 -

**AND**

Richard J. (Rex) Burch
Texas Bar No. 24001807
Federal ID 21615
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

**ATTORNEYS FOR PLAINTIFF**