## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

**BRADLEY HARDIN and BENJAMIN FEIST, Individually and for Others Similarly Situated,**

**v.**

**THE TEXIAN GROUP, INC.**

**Civil Action No. 4:22-cv-00111**

## PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE SETTLEMENT

Michael A. Josephson
Andrew W. Dunlap
William M. Hogg
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100; Fax: (713) 352-3300
mjosephson@mybackwages.com
adunlap@mybackwages.com
whogg@mybackwages.com

Richard J. (Rex) Burch
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788; Fax: (713) 877-8065
rburch@brucknerburch.com

*Attorneys for Plaintiffs and Class Members*

**TABLE OF CONTENTS**

1.    Introduction. ........................................................................................................ 1

2.    Factual and Procedural Background. ................................................................. 2

3.    Terms of the Settlement. .................................................................................... 5

      A.  Basic terms and value. ............................................................................ 5

      B.  Allocation and awards. ............................................................................ 7

      C.  Scope of release. ..................................................................................... 7

      D.  Settlement administration. ...................................................................... 8

4.    Arguments and Authorities. .............................................................................. 9

      A.  Legal standard for preliminary settlement approval. ............................. 9

      B.  Legal standard for Rule 23 class certification. .................................... 10

      C.  The Court has already granted Rule 23 class certification, and should find those
          requirements are still met for purposes of preliminary approval. ............... 11

      D.  Preliminary approval of the Rule 23 settlement is appropriate. ........... 11

            i.     The settlement was the result of arm's-length negotiations. .......... 13

            ii.    The settlement is in the Parties' best interests. ........................... 13

            iii.   The parties completed substantial discovery. ............................. 15

            iv.    The settlement is within the range of possible recovery. ............. 16

      E.  The Court should approve the proposed Settlement Notice. ................. 18

5.    Conclusion. ...................................................................................................... 19

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alaniz v. Maxum Petroleum Operating Co.*,
 No. SA-15-CV-00373-XR, 2016 WL 6462206 (W.D. Tex. Oct. 31, 2016) ........................... 13

*Amchem Prods., Inc. v. Windsor*,
 521 U.S. 591 (1997) ....................................................................................... 11

*Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*,
 211 F.R.D. 457 (S.D. Fla. 2002) ..................................................................... 14

*Balderas v. Massage Envy Franchising, LLP*,
 No. 12-cv-06327 NC, 2014 WL 3610945 (N.D. Cal. July 21, 2014) ....................................... 17

*Baricuatro v. Industrial Personnel and Mgmt. Servs., Inc.*,
 No. 11-2777, 2013 WL 6072702 (E.D. La. Nov. 18, 2013) .................................................. 18

*Barrentine v. Arkansas-Best Freight Sys., Inc.*,
 450 U.S. 728 (1981) ....................................................................................... 14

*Basco v. Wal-Mart Stores, Inc.*,
 216 F. Supp. 2d 592 (E.D. La. 2002) ............................................................... 18

*Beckman v. KeyBank, N.A.*,
 293 F.R.D. 467 (S.D.N.Y. 2013) ..................................................................... 14

*Bellinghausen v. Tractor Supply Co.*,
 306 F.R.D. 245 (N.D. Cal. 2015) ................................................................... 17

*Churchill Village LLC v. Gen. Elec.*,
 361 F.3d 566 (9th Cir. 2004) .......................................................................... 20

*D'Alauro v. GC Servs. Ltd.*,
 168 F.R.D. 451 (E.D.N.Y. 1996) ................................................................... 11

*DeJulius v. New England Health Care Emps. Pension Fund*,
 429 F.3d 935 (10th Cir. 2005) ........................................................................ 19

*Henderson v. Eaton*,
 No. 01-0138, 2002 WL 31415728 (E.D. La. Jan. 2, 2002) ..................................... 15

*In re AutoZone, Inc., Wage & Hour Empl. Practices Litig.*,
 289 F.R.D. 526 (N.D. Cal. 2012) ................................................................... 18

*In re Cardizem CD Antitrust Litig.*,
 218 F.R.D. 508 (E.D. Mich. 2003) ................................................................ 14

*In re Deepwater Horizon*,
　739 F.3d 790 (5th Cir. 2014) ............................................................................ 11

*In re Domestic Air Transp. Antitrust Litig.*,
　148 F.R.D. 297 (N.D. Ga. 1993)......................................................................... 18

*In re Newbridge Networks Sec. Litig.*,
　No. 94-1678-LFO, 1998 WL 765724 (D.D.C. Oct. 23, 1998) ............................. 18

*In re Pool Prods. Distribution Market Antitrust Litig.*,
　310 F.R.D. 300 (E.D. La. 2015) .................................................................. 16, 19

*In re Ravisent Techs., Inc. Sec. Litig.*,
　No. 00-CV-1014, 2005 WL 906361 (E.D. Pa. Apr. 18, 2005)............................. 17

*In re Syncor ERISA Litig.*,
　516 F.3d 1095 (9th Cir. 2008) ........................................................................... 14

*In re U.S. Foodservice Inc. Pricing Litig.*,
　729 F.3d 108 (2d Cir. 2013) .............................................................................. 11

*Jenkins v. Trustmark Nat'l Bank*,
　300 F.R.D. 291 (S.D. Miss. 2014) ........................................................... 15, 16, 19

*Jones v. Singing River Health Servs. Found.*,
　865 F.3d 285 (5th Cir. 2017) ............................................................................. 13

*Kilbourne v. Coca-Cola Co.*,
　No. 14-cv-984-MMA-BGS, 2015 WL 5117080 (S.D. Cal. July 29, 2015) ............ 18

*Klein v. O'Neal, Inc.*,
　705 F. Supp. 2d 632 (N.D. Tex. 2010) ............................................................... 16

*Lynn's Food Stores, Inc. v. United States*,
　679 F.3d 1350 (11th Cir. 1982) ......................................................................... 13

*Ma v. Covidien Holding, Inc.*,
　No. SACV 12-02161-DOC (RNBx), 2014 WL 360196 (C.D. Cal. Jan. 31, 2014)................. 17

*Mashburn v. Nat'l Healthcare, Inc.*,
　684 F. Supp. 660 (M.D. Ala. 1988) ................................................................... 15

*Mullane v. Cent. Hanover Bank & Trust Co.*,
　339 U.S. 306 (1950)........................................................................................... 19

*Officers for Justice v. Civil Service Com'n of City and Cnty. of San Francisco*,
　688 F.2d 615 (9th Cir. 1982) ............................................................................. 17

*Reed v. Gen. Motors Corp.*,
    703 F.2d 170 (5th Cir. 1983) ................................................................. 13

*Ruiz v. McKaskle*,
    724 F.2d 1149 (5th Cir. 1984) ............................................................... 13

*Shaw v. Toshiba America Information Systems, Inc.*,
    91 F. Supp. 2d 942 (E.D. Tex. 2000) ..................................................... 17

*Silber v. Mabon*,
    18 F.3d 1449 (9th Cir. 1993) ................................................................. 19

*Stovall-Gusman v. W.W. Granger, Inc.*,
    No. 13-cv-02540-HSG, 2015 WL 3776765 (N.D. Cal. June 17, 2015) .................................. 17

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*,
    669 F.3d 632 (5th Cir. 2012) ................................................................. 13

*Viceral v. Mistras Grp., Inc.*,
    No. 15-cv-2198-EMC, 2016 WL 5907869 (N.D. Cal. Oct. 11, 2016) ..................................... 17

*Villafan v. Broadspectrum Downstream Servs.*,
    No. 18-cv-06741-LB, 2020 WL 6822908 (N.D. Cal. Nov. 20, 2020) ..................................... 18

**Statutes**

29 U.S.C. § 216 ..................................................................................... 1, 2

**Rules**

Fed. R. Civ. P. 23 ....................................................................... 1, 10, 11, 20

**Treatises**

Manual for Complex Litigation (4th ed. 2004) .................................................. 12, 13, 20

Newberg on Class Actions (4th ed. 2002) ....................................................... 12, 13

## 1.    Introduction.

The Court previously certified this wage-and-hour lawsuit as a class action pursuant to Rule 23, and found the opt-in plaintiffs are similarly situated under 29 U.S.C. § 216(b). Under Federal Rule of Civil Procedure 23(e), the claims of a certified class may be settled or compromised only with the Court's approval. *See* Fed. R. Civ. P. 23(e).

As such, Plaintiffs Bradley Hardin ("Hardin") and Roy Steward ("Steward") (together, the "Plaintiffs") respectfully move for preliminary approval of the Class and Collective Action Settlement (the "Settlement Agreement" or the "Settlement," attached as Exhibit 1 to the accompanying Declaration of William Hogg). The Settlement resolves all of the claims in this Action on a class- and collective-wide basis. Plaintiffs move for an Order:

(a)    Granting preliminary approval of the Settlement Agreement;

(b)    Finding the New York Class still meets the Rule 23 requirements for settlement purposes;

(c)    Approving the proposed schedule and procedure for completing the final process for the Settlement, including the Final Approval Hearing;

(d)    Approving the Settlement Class Notice (attached as Exhibit A to the Settlement Agreement);

(e)    Approving the Settlement Collective Notice (attached as Exhibit B to the Settlement Agreement)

(f)    Finding Josephson Dunlap LLP and Bruckner Burch PLLC are still adequate and appropriate Class Counsel for the Class and Collective Members;

(g)    Preliminarily approving Class Counsel's request for attorneys' fees and costs;

(h)    Preliminarily appointing and approving Hardin and Steward as Class Representatives for settlement purposes;

(i)    Preliminarily appointing and approving Simpluris as the Settlement Administrator; and

(j)    Authorizing the Settlement Administrator to mail and email (if email addresses are available) the approved Class Notice and Opt-in form to the Class and Collective Members.

The Parties have resolved the claims of 50 opt-in plaintiffs and 92 Rule 23 class members,[1] for a total settlement of $1,500,000. With this favorable Settlement, the Parties are resolving numerous wage-and-hour claims with certainty and finality, when taking these claims to trial would be costly, time-consuming, and would have an uncertain outcome. The Settlement provides a reasonable benefit to the Class and an efficient outcome in the face of protracted litigation. The Settlement is fair, reasonable, and adequate in all respects, and Plaintiffs respectfully request the Court grant the requested approvals.

**2.      Factual and Procedural Background.**

Hardin originally filed this lawsuit as a single count collective action under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 216(b), seeking unpaid overtime wages against Defendant The Texian Group, Inc. ("Defendant" or "Texian") on behalf of himself and current and former inspectors who worked for Texian and were paid according to Texian's alleged "day rate" pay plan (*i.e.*, Hardin alleged Texian failed to track their hours worked and presumed they worked a set number of hours each day, thereby failing to pay them for all of their overtime hours worked each week). *See* Dkt. 1; Hogg Decl. at ¶ 12.

Steward joined the action as a party plaintiff by filing his written consent to join the collective action pursuant to 29 U.S.C. § 216(b) the same day Hardin filed suit. *See* Dkt. 4; Hogg Decl. at ¶ 12. Following an amendment to the complaint, one of the opt-in plaintiffs, Benjamin Feist (*see* Dkt. 4) was included as a named plaintiff to allege factually related claims under the New York Labor Law ("NYLL") on behalf of Texian's employees who performed work in the State of New York. *See* Dkt. 47; Hogg Decl. at ¶ 13. The Amended Complaint also included

---

[1]    Of the 92 class members, only 13 are also opt-in plaintiffs (*i.e.*, 14.13% of the Rule 23 class are also FLSA opt-in plaintiffs).

allegations that Texian failed to include all remuneration into Class and Collective Members' regular rates by improperly excluding per diems, thereby allegedly under-calculating their overtime rates of pay in violation of the FLSA and NYLL. *Id.*

Hardin is a former employee of Texian who worked as a non-exempt inspector in various locations throughout the country, including Alabama, Louisiana, Texas, Massachusetts, and Mississippi. *See* Dkt. 54-12 at ¶ 2. Steward worked as a non-exempt inspector for Texian in various states as well, including Wyoming, Connecticut, Rhode Island, New York, and Maine. *See* Dkt. 54-13 at ¶ 2. Texian is a pipeline field services firm specializing in pipeline inspection and safety inspection. *See* Dkt. 47 at ¶ 29; Dkt. 52 at ¶ 29. Plaintiffs and the Settlement Class members work for Texian as inspectors. *See* Hogg Decl. at ¶ 14.

Plaintiffs allege that they, and the putative Class, performed for work Texian that resulted in unpaid overtime wages in one of two ways: (1) because Texian failed to track their hours worked and instead presumed they worked a set number of hours each day (*i.e.*, an effective "day rate") which resulted in inspectors not being paid for all their overtime hours worked each week; and (2) because Texian improperly excluded per diems from their regular rates of pay which resulted in underpayment of overtime wages. *See* Hogg Decl. at ¶ 15. Plaintiffs allege this resulted in FLSA violations and, for those inspectors who worked for Texian in the State of New York, violations of the NYLL. *Id.* For those inspectors who worked in New York, Plaintiffs also alleged this further resulted in violations of the NYLL's wage statement requirements. *Id.*

Texian has at all times denied, and continues to deny, these allegations, and denies any and all liability for Plaintiffs' claims. *See* Hogg Decl. at ¶ 16. Specifically, Texian argued its wage policies, timekeeping policies, per diem policies, and wage statement policies, were consistent

with applicable law, and, to that to the extent there were any violations of the law, if any, they occurred on an "ad hoc" basis and contrary to Texian's established policy. *Id.*

After the initial pleadings phase, the Parties engaged in formal discovery, including the Court's mandatory FLSA discovery protocols, depositions, and formal written discovery. *See* Hogg Decl. ¶ 17. Plaintiffs moved for leave to amend the complaint to include the NYLL claims on June 20, 2023, following written discovery and depositions of Texian's payroll employee, President, and corporate representative. *See* Dkt. 43. The Court granted that motion and Plaintiffs filed the First Amended Complaint on July 31, 2023, in which the NYLL claims were asserted on a class-wide basis. *See* Dkt. 47. Texian answered the Amended Complaint on August 21, 2023. *See* Dkt. 52.

On November 16, 2023, Hardin moved for issuance of court-authorized notice under the FLSA. *See* Dkt. 54. On December 1, 2023, Steward moved for Rule 23 class certification of the NYLL claims. *See* Dkt. 57. Texian filed responses to the motions. *See* Dkt. Nos. 58 & 62. The Court granted Rule 23 class certification and found the potential collective members were similarly situated under the FLSA. *See* Dkt. Nos. 65 & 66. Following the close of the notice period, 50 total Opt-in Plaintiffs joined the FLSA collective action, and only 1 Rule 23 class member submitted a timely request to exclude himself from the class.

Following post-certification discovery, the Parties requested and were granted a referral to mediation on September 11, 2024. *See* Dkt. 84. On November 19, 2024, Magistrate Judge Diana Palermo conducted a settlement conference which resulted in a class-wide settlement. *See* Dkt. 88. The Parties thereafter reduced the terms of that settlement to a writing (the "Settlement Agreement"). *See* Exhibit 1. The Court issued an order dismissing the case due to settlement on November 22, 2024. *See* Dkt. 89.

3.      **Terms of the Settlement.**

    A.      **Basic terms and value.**

Texian has agreed to pay a Gross Settlement Amount of $1,500,000 to settle the case. *See* Exhibit 1. The terms and conditions of that agreement are set forth in the Settlement Agreement. *Id.* The net settlement amount available to pay settlement awards to the Class Members is comprised of: (i) the Individual Settlement Payments to Participating Settlement Members; (ii) the Service Payments to Class Representative Steward and Collective Representative Hardin; (iii) the Settlement Administration Costs; (iv) and the Class Counsel Award. *Id.* § 2.16.

The Gross Settlement Amount is a negotiated amount that resulted from substantial arm's length negotiations and significant investigation by Class Counsel. Class Counsel based their damages analysis and settlement negotiations on formal discovery, including documents exchanged between the parties, payroll and timekeeping data, deposition testimony, as well as information provided by the Class Members. *See* Hogg Decl. at ¶ 26. Class Counsel built a comprehensive damage model from the payroll and timekeeping data provided by Texian, and applied formulas to determine the total potential damages for unpaid overtime hours and wage statement damages based on a number of different scenarios, including probabilities of winning on the merits and different outlooks on variations in the class-wide assumptions for number of hours worked per day/week. *Id.* at ¶ 27.

Assuming each Class and Collective Member worked, on average, 6 days per week and 12 hours per day (for a total of 72 hours per workweek on average), Class Counsel calculated the potential Rule 23 class action exposure for the NYLL overtime claims (not including overlapping FLSA damages) to be $1,115,871, liquidated damages to be an additional $1,115,871, and wage statement damages under NYLL § 198 to be an additional $460,000. In total, Class Counsel

– 5 –

calculated Texian's exposure for the NYLL class action claims to be approximately $2,691,000. *See* Hogg Decl. at ¶ 28.

Using the same hours assumptions and using a 3-year statute of limitations lookback, Class Counsel calculated the potential FLSA damages for all opt-in plaintiffs to be $1,404,956, plus liquidated damages in an additional amount of $1,404,956. In total, Class Counsel calculated Texian's exposure for the FLSA damages to be approximately $2,810,000. *Id.* In total, Class Counsel calculated Texian maximum total exposure for the class and collective claims to be approximately $5,500,000. *Id.* This figure is based on Class Counsel's assessment of a best-case scenario. To have obtained such a result at trial or summary judgment, Plaintiffs would have to prove that all of the 92 Class members and 50 Opt-in Plaintiffs worked 12 hours per day and 6 days per week on average each workweek, and that Texian acted knowingly or in bad faith. *Id.* In comparison to this best-day-at-trial estimated exposure, the Gross Settlement Amount of $1,500,000 represents a recovery of 27.27%.

Plaintiffs and their counsel considered the significant risks of continued litigation, described herein, when considering the proposed settlement. *Id.* at ¶ 30. These risks were front and center, particularly given the nature of the off-the-clock claims, which would be challenging to prove. *Id.* In contrast, the Settlement will result in immediate and certain payments to the Class and Collective Members in meaningful amounts, representing over 27% of their best-possible-day damages. These amounts provide significant compensation for the Class and Collective Members, and the Settlement provides a reasonable recovery in the face of expensive and uncertain litigation. In light of all the risks, the settlement amount is fair, reasonable, and adequate. *Id.*

Named Plaintiffs, the 50 Collective Members who submitted written consent to join this Act, and any of the 92 Class Members included within the certified Rule 23 class who worked for

Texian in the State of New York at some time from January 12, 2016 through November 19, 2024, who do not timely opt-out of the Settlement will be eligible to receive a payment from the settlement. *See* Exhibit 1 § 2.20. By executing settlement checks, the Participating Class Members will release their FLSA and related state wage and hour law claims. *Id.* §§ 4.18-4.20.2. By virtue of the Agreement, the Rule 23 Class Members who do not timely exclude themselves will have their New York state wage claims extinguished. *Id.* § 4.18.2.

### B.      Allocation and awards.

Depending on the Court's award of attorneys' fees, costs, and service awards, the total amount to be paid to the Class Members will be approximately $848,000.00. This would be the sum of the Net Settlement Fund if the Court awards attorneys' fees in the amount of 40%, plus requested Class Counsel's litigation costs, Settlement Administrator costs, and service awards. *See* Exhibit 1 §§ 4.3, 4.4, 4.15. Class Members will receive payments on a pro rata percentage basis based on the number of workweeks worked within the relevant time period. *Id.* § 4.12.1.1 (detailing calculation).

### C.      Scope of release.

FLSA Opt-in Plaintiffs release any and all claims under the FLSA based on or arising out of the same factual predicates of the Action, as well as state-law wage-and-hour claims that could have been brought based on the factual allegations in the Complaint. *See* Exhibit 1 § 4.18.1. The Rule 23 Class Members who do not exclude themselves from the settlement will release any and all claims under New York wage-and-hour law, based on or arising out of the same factual predicates of the Action, including all claims that were or could have been raised in the Action and

other wage-and-hour claims for damages, premiums, penalties, statutory damages, interest, attorneys' fees, and costs. *Id.* § 4.18.2. The scope of the releases run from the beginning of the relevant limitations period through the date the Court grants preliminary approval of the Settlement. *Id.* § 4.18.3. Plaintiffs Hardin and Steward will agree to a wider, general release of claims in exchange for their Service Awards. *Id.* § 4.20.

       **D.**     **Settlement administration.**

No later than 14 days after the Court preliminarily approves the Agreement, Defendant will provide the Class List necessary to calculate Plaintiffs' individual shares of the settlement and distribute Notice of the settlement to the Administrator. *See* Exhibit 1 § 4.7.2. Within 14 days of receiving the Class List, the Administrator will send to all Plaintiffs identified in the Class List, via first class mail and email, the Court-approved Class Notice. *Id.* § 4.7.3.

The Notice of Settlement, Exhibits 1-A & 1-B, advises all Opt-in Plaintiffs and Class Members of the binding nature of the release and, upon Final Approval, such shall have the same force and effect as if this Agreement were executed by each Participating Settlement Member. Exhibit 1 § 7.7. The Notice of Settlement expressly informs Plaintiffs about the procedures and deadlines for objecting and opting out of the settlement as it relates to claims in this Settlement, the date of the final approval hearing, the settlement amount and their individual pro rata settlement share, and the manner in which the Net Settlement Amount shall be allocated. Exhibits 1-A & 1-B. All Class Members who choose not to timely exclude themselves from the settlement as provided by the Agreement will be before the Court as parties to the Action under Rule 23. Exhibit 1 §§ 2.20, 4.8.3.

Settlement participants will have 30 days to object to the settlement, challenge their individual settlement allocation, or request exclusion from the settlement. *Id.* §§ 2.25.4, 4.9, 4.10.

Rule 23 Class Members who do not exclude themselves from the Agreement in the manner and by the Response Deadline will automatically become a Participating Settlement Member, and will be bound by all terms and conditions of the Agreement, including its release of the Release Claims, regardless of whether he or she has objected to the Agreement. *Id.* § 4.8.3. A Rule 23 Class Member who properly and timely submits a request to opt-out of the Settlement Agreement will not become a Participating Settlement Member, will not receive any funds from the settlement, and will not be bound by the Agreement. *Id.* § 4.8.4.

The Notice further advises Plaintiffs that if they do not exclude themselves from the settlement and do negotiate or deposit the settlement check sent following the fairness hearing and final approval of the Agreement, they will be affirmatively consenting to join the FLSA collective action portion of this Action and give up any rights to separately sue Defendant for overtime under the FLSA. Exhibit 1-A.

Following the Court's order granting Final Approval of the Settlement and within 45 days of the Effective Date, the Settlement Administrator will disburse the Attorney Fees and Costs, Service Payment, and the individual payments. *See* Exhibit 1 §§ 2.14, 4.15.

The Opt-in Plaintiffs will have 120 days from the date the settlement checks are issued to negotiate, execute, or sign the checks. Exhibit 1 § 4.16. After 120 days any uncashed checks will be voided. However, any funds from the settlement checks returned as undeliverable or not negotiated within 120 days shall be deposited in the state treasury's unclaimed funds account for the state where the Participating Settlement Member last lived according to Texian records. *Id.* § 4.16.

## 4.    Arguments and Authorities.

### A.    Legal standard for preliminary settlement approval.

Pursuant to Rule 23(e), a certified class action "may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). The rule sets out a number of procedures for class settlements, including showing the Court that it approval would be appropriate and that the class should remain certified for purposes of judgment on the proposal. Fed. R. Civ. P. 23(e)(1)(B). The Court may approve the settlement after a hearing and finding that the settlement is fair, reasonable, and adequate after considering whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; and (C) the relief provided for the class is adequate. Fed. R. Civ. P. 23(e)(2). If, as here, the class action was previously certified under Rule 23(b)(3), the Court "may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so." Fed. R. Civ. P. 23(e)(4).

### B.    Legal standard for Rule 23 class certification.

The requirements for class certification are set forth under Federal Rule of Civil Procedure 23. A party seeking to certify a class must satisfy the four requirements of Rule 23(a), and also satisfy one of the three "pigeon holes" of Rule 23(b). *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 614 (1997). A party must establish each of Rule 23's requirements by a preponderance of the evidence. *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 117 (2d Cir. 2013). In analyzing the issue of certification, the Court accepts as true the allegations in the complaint regarding the merits of the claim. *See D'Alauro v. GC Servs. Ltd.*, 168 F.R.D. 451, 454 (E.D.N.Y. 1996).

Class certification under Rule 23(a) is appropriate if the class is "ascertainable" and if the following four requirements are met: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the representative's

claims or defenses are typical of those of the class; and (4) the representative will fairly and adequately represent the interests of the class. Fed. R. Civ. P. 23(a). Implicitly, class certification also requires that the proposed class be "adequately defined and clearly ascertainably." *In re Deepwater Horizon*, 739 F.3d 790, 821 (5th Cir. 2014). Rule 23(b)(3) requires that questions of law or fact common to class members predominate questions affecting only individual members, and that a class action is superior to other available methods for fairly and effectively adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

> **C.    The Court has already granted Rule 23 class certification, and should find those requirements are still met for purposes of preliminary approval.**

Here, the Court previously conducted a full analysis of the Rule 23 factors and found Steward demonstrated, based on a preponderance standard, that all of the Rule 23(a) and Rule 23(b)(3) requirements are met, and thus that class certification is appropriate. *See* Dkt. 66. The Court certified three classes under the NYLL: (1) the Day Rate Class; (2) the Per Diem Class; and (3) the Wage Statement Class. *Id.* The Court found Steward is an adequate Class Representative, and that Josephson Dunlap and Bruckner Burch are adequate Class Counsel. *Id.*

For purposes of approving the settlement and facilitating notice of the settlement to the class members, there is no reason to disturb that finding. The same is true today as it was when the Court previously found numerosity, ascertainability, commonality, typicality, adequacy, predominancy, and superiority have been met. *See* Dkt. 66. For purposes of facilitating the Parties' Rule 23 settlement, the Court should likewise find those requirements are still met today for the same reasons already established by Steward through motion practice. *See* Dkt. 57; Dkt. 66.

> **D.    Preliminary approval of the Rule 23 settlement is appropriate.**

Rule 23(e) requires the Court to preliminarily evaluate the settlement for fairness. Such a review is generally split into two hearings, a preliminary approval hearing and a final approval

hearing. *See* Manual for Complex Litigation § 21.632 (4th ed. 2004); 4 Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 11.25 (4th ed. 2002). First, counsel submit the proposed terms of the settlement and the Court makes a preliminary fairness evaluation. *Id.* This initial evaluation can be made on the basis of information already known, or may be supplemented by briefs, evidence, or other presentations. *Id.* "The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Id.*

This preliminary approval process requires the Court to evaluate whether the proposed settlement was negotiated at arm's length and is within the range of possible litigation outcomes such that "probably cause" exists to disseminate notice and begin the formal fairness process. *See* Manual for Complex Litigation §§ 21.632-33. Courts in the Fifth Circuit generally look to six factors in assessing fairness, reasonableness, and adequacy: (1) the existence of potential fraud or collusion behind the settlement; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and absent class members. *See Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 n.11 (5th Cir. 2012). These factors are commonly referred to as the "*Reed*" factors. *See Jones v. Singing River Health Servs. Found.*, 865 F.3d 285, 293 (5th Cir. 2017) (quoting *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)).

After the Court makes a preliminary fairness evaluation and notice of the class settlement has been distributed, the Court must then hold a final fairness hearing to determine whether the proposed settlement is truly fair, reasonable, and adequate. *See* Manual for Complex Litigation §§ 21.633-34; Newberg § 11.25.

Separately (but relatedly), courts in the Fifth Circuit may review FLSA settlements to determine whether the settlement is a "fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Alaniz v. Maxum Petroleum Operating Co.*, No. SA-15-CV-00373-XR, 2016 WL 6462206, at *1 (W.D. Tex. Oct. 31, 2016) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.3d 1350, 1353 (11th Cir. 1982)). Here, all of the *Reed* factors demonstrate preliminary approval is appropriate. Additionally, the proposed settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions. The Court should grant preliminary approval of the class action settlement and approve the FLSA settlement.

### i.    The settlement was the result of arm's-length negotiations.

There are no allegations or indications of fraud or collusion here. *See Ruiz v. McKaskle*, 724 F.2d 1149, 1152 (5th Cir. 1984) ("In the absence of fraud or collusion, the trial court should be hesitant to substitute its own judgment for that of counsel."); *see also* Newberg, § 11:51 (there is a presumption that no fraud or collusion occurred between counsel, in the absent of evidence to the contrary). Moreover, the settlement here was the result of a settlement conference overseen by Judge Palermo, further indicating it was the result of arm's-length negotiations and not from any collusive efforts. As such, the first *Reed* factor weighs in favor of preliminary approval.

### ii.    The settlement is in the Parties' best interests.

"FLSA claims typically involve complex mixed questions of fact and law, and issues must be resolved "in light of volumes of legislative history and over four decades of legal interpretation and administrative rulings." *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 743 (1981). "Among FLSA cases, the most complex type is the 'hybrid' action brought here, where state wage and hour violations are brought as an 'opt out' class action pursuant to Rule 23 in the

same action as the FLSA 'opt in' collective action pursuant to 29 U.S.C. § 216(b)." *Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 479-80 (S.D.N.Y. 2013).

There is "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *Assoc. for Disabled Am., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002) (there is "an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex."); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003) ("there is a strong public interest in encouraging settlement of complex litigation and class action suits because they are notoriously difficult and unpredictable and settlement conserved judicial resources.").

This case has already spanned several years and, absent settlement, Plaintiffs anticipate moving for summary judgment on all claims and, upon summary judgement being granted, Plaintiffs anticipate a subsequent trial regarding damages, both of which would extend the litigation timeline significantly. Without settlement, Class Counsel anticipate incur over $750,000 on dispositive motions briefing, trial, post-trial litigation, collections, and possible appeals. *See* Hogg Decl. at ¶ 53. It is likely Texian would incur similar or higher defense costs.

The settlement, however, provides immediate relief and avoids the certainty of additional, expensive, and protracted litigation. *See Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 303 (S.D. Miss. 2014) ("Although this Action was actively litigated for over two years, recovery by any means other than settlement would require additional years of litigation."); *Henderson v. Eaton*, No. 01-0138, 2002 WL 31415728, at *3 (E.D. La. Jan. 2, 2002) (following discovery, "several fundamental issues in the case remained in dispute: … Resolving these questions through

– 14 –

a trial and, ostensibly, an appeal, would likely be burdensome and costly."). As such, the second *Reed* factor weighs in favor of preliminary approval.

### iii.    The parties completed substantial discovery.

The parties engaged in active discovery throughout the duration of this lawsuit, including extensive written discovery, exchange of voluminous documents, and comprehensive depositions. Thousands of pages of relevant materials were produced, from which the parties properly assessed liability risks and potential damages. All of this, as well as the experience of counsel, ensured that "counsel had an adequate appreciation of the merits of the case before negotiating." *Jenkins*, 300 F.R.D. at 303-04. The parties then consummated the settlement having a clear view towards the strengths and weaknesses of their respective positions. *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 669 (M.D. Ala. 1988) ("Class Counsel developed ample information and performed extensive analyses from which to determine the probability of their success on the merits, the possible range of recovery, and the likely expense and duration of the litigation.").

Class Counsel, relying on their years of experience litigating similar wage-and-hour class and collective actions, is also of the opinion that the settlement is fair and reasonable. *Klein v. O'Neal, Inc.*, 705 F. Supp. 2d 632, 649 (N.D. Tex. 2010) ("The Fifth Circuit has repeatedly stated that the opinion of class counsel should be accorded great weight [when] evaluating a proposed settlement."). The Class Representative and Collective Representative are likewise in agreement. Plaintiffs are likewise confident the Class Members will approve of the settlement following the notice period.

Given the extensive discovery completed, opinion of Class Counsel, and opinions of the Class and Collective Representatives, the third and sixth *Reed* factors weighs in favor of preliminary approval.

### iv.    The settlement is within the range of possible recovery.

Courts are to consider "the likelihood and extent of any recovery from the defendants absent settlement." *Jenkins*, 300 F.R.D. at 304. And "[t]he settlement terms should be compared with the likely rewards the class would have received following a successful trial of the case." *In re Pool Prods. Distribution Market Antitrust Litig.*, 310 F.R.D. 300, 316 (E.D. La. 2015).

As noted above, Class Counsel calculated the maximum potential damages in this case as $5,500,000. *See* Hogg Decl. at ¶¶ 29, 44. For an off-the-clock case like this (*i.e.*, a case where plaintiffs claim they worked more hours than are reflected on defendant's timekeeping records), recovery of such damages would require complete success and certification through trial. Plaintiffs would be required to overcome motion(s) to decertify the class and would have to prove their hours worked beyond those reflected in Texian's records. This would not be a guaranteed feat in light of developments in wage-and-hour class and collective action law, as well as the legal and factual grounds Texian asserted to defend this action. *Id.* at ¶ 44. In comparison, the Gross Settlement Amount of $1,500,000 amounts to more than 27% of the estimated maximum possible recovery. Courts routinely approve settlements that provide a fraction of the maximum potential recovery. *See, e.g., Officers for Justice v. Civil Service Com'n of City and Cnty. of San Francisco*, 688 F.2d 615, 623 (9th Cir. 1982); *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942, 988 (E.D. Tex. 2000) (citing study conducted by the National Economic Research Associates: "the average result achieved for class members was only 7% to 11% of claimed damages.") *Viceral v. Mistras Grp., Inc.*, No. 15-cv-2198-EMC, 2016 WL 5907869, at *7 (N.D. Cal. Oct. 11, 2016) (approving wage and hour settlement representing 8.1% of the total possible estimated verdict value); *Stovall-Gusman v. W.W. Granger, Inc.*, No. 13-cv-02540-HSG, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) ("10% gross and 7.3% net figures are 'within the range of

reasonableness'''); *Balderas v. Massage Envy Franchising, LLP*, No. 12-cv-06327 NC, 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (gross settlement amount of 8% of maximum recovery and net settlement amount of 5% was reasonable); *Ma v. Covidien Holding, Inc*., No. SACV 12-02161-DOC (RNBx), 2014 WL 360196, at *4-5 (C.D. Cal. Jan. 31, 2014) (9.1% of "the total value of the action" is within the range of reasonableness); *Bellinghausen v. Tractor Supply Co*., 306 F.R.D. 245, 256 (N.D. Cal. 2015) (wage and hour class settlements are considered fair where the settlement fund represents between 9% and 27% of the total potential recovery); *In re Ravisent Techs., Inc. Sec. Litig.*, No. 00-CV-1014, 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement, which amounted to 12.2% of damages, and citing a study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 325 (N.D. Ga. 1993) (12.7% to 15.3% considered reasonable); *In re Newbridge Networks Sec. Litig.*, No. 94-1678-LFO, 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) (noting an agreement that secures roughly 6%-12% of a potential trial recovery while preventing further expense and delay and "eliminating risk that no recovery at all will be won, seems to be within the targeted range of reasonableness").

Plaintiffs' settlement result here is extraordinary in light of the nature of the claims as "off-the-clock." As a general matter, off-the-clock claims can be difficult to maintain as a class action through trial given the nature, cause, and amount of off-the-clock work may vary depending on individualized circumstances of the worker. *See, e.g., Villafan v. Broadspectrum Downstream Servs.*, No. 18-cv-06741-LB, 2020 WL 6822908, at *6 (N.D. Cal. Nov. 20, 2020) (citing *In re AutoZone, Inc., Wage & Hour Empl. Practices Litig.*, 289 F.R.D. 526, 539 (N.D. Cal. 2012), *aff'd*, No. 17-17533, 2019 WL 4898684 (9th Cir. Oct. 4, 2019)); *Kilbourne v. Coca-Cola Co.*, No. 14-

cv-984-MMA-BGS, 2015 WL 5117080, at *14 (S.D. Cal. July 29, 2015); *Baricuatro v. Industrial Personnel and Mgmt. Servs., Inc.*, No. 11-2777, 2013 WL 6072702, at *6 (E.D. La. Nov. 18, 2013); *York v. Starbucks Corp.*, No. CV 08-07919 GAF PJWx, 2011 WL 8199987, at *30 (C.D. Cal. Nov. 23, 2011); *Basco v. Wal-Mart Stores, Inc.*, 216 F. Supp. 2d 592 (E.D. La. 2002).

While Plaintiffs are confident they would establish Texian's alleged common policies and practices result in compensable off-the-clock work, Plaintiffs acknowledge off-the-clock claims are susceptible to defenses that they require individualized inquiries. With those considerations in mind, Plaintiffs recognize that maintaining class certification and collective action statute through trial would not be a certainty, and would therefore present an obstacle with the risk that Class Members might only be able to pursue individual actions in the event the Court decertified the class. In contrast to litigating this suit, resolving the case through settlement will yield a prompt, certain, and substantial recovery for the Class Members and Opt-in Plaintiffs. Such a result will benefit the Parties and the court system. It will bring finality to extensive litigation and will foreclose the possibility of expanding litigation.

In the end, the settlement constitutes an objectively favorable result for the Class Members and Opt-in Plaintiffs, and outweighs the mere possibility of uncertain future relief after protracted and expensive litigation. *See Jenkins*, 300 F.R.D. at 303. The fourth and fifth *Reed* factors thus weigh in favor of preliminary approval here.

**E.   The Court should approve the proposed Settlement Notice.**

District courts must direct notice to all class members who would be bound by a proposal. *In re Pool Prods.*, 310 F.R.D. at 317. The notice must be "reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 317 (citing *DeJulius v. New England Health Care*

*Emps. Pension Fund*, 429 F.3d 935, 943–44 (10th Cir. 2005)). Procedural due process does not guarantee any particular procedure but rather requires only notice reasonably calculated "to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1993). A settlement notice "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Village LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

The proposed Settlement Notices here (Exhibits A and B to the Settlement Agreement) satisfy Rule 23(e)'s requirements and constitute the best notice practicable. They inform the recipients, in clear, neutral, and accurate terms, about the nature of the action, the settlement, the approval process, their right to opt-out of the settlement or object if they are a Rule 23 class member, and the release terms. Manual for Complex Litigation, Settlement Notice § 21.312 (4th ed. 2004). The notices will be sent via U.S. Mail and email to all Class Members and Opt-in Plaintiffs by the Settlement Administrator, who will take reasonable steps to ensure up-to-date mailing addresses. Class Members will have 60 days from the mailing to opt-out, object, or challenge their pro rata calculation.

Because the notices are thorough, clear, open, and informative, and because they will be disseminated in a way calculated to notify the Class Members in the most effective and efficient manner possible, they should be approved by the Court as satisfying Rule 23(e)'s settlement notice requirements. The Settlement Notices should be approved.

**5.    Conclusion.**

– 19 –

Plaintiffs respectfully request the Court grant preliminary approval of the Settlement Agreement. Plaintiffs further request the Court approve the proposed schedule set forth in the proposed order.

Date: May 22, 2025                              Respectfully submitted,

                                                */s/ William M. Hogg*
                                                **Michael A. Josephson**
                                                Federal ID 27157
                                                **Andrew W. Dunlap**
                                                Federal ID 1093163
                                                **William M. Hogg**
                                                Federal ID 3060906
                                                **JOSEPHSON DUNLAP LLP**
                                                11 Greenway Plaza, Suite 3050
                                                Houston, Texas 77046
                                                713-352-1100 – Telephone
                                                713-352-3300 – Facsimile
                                                mjosephson@mybackwages.com
                                                adunlap@mybackwages.com
                                                whogg@mybackwages.com

                                                **Richard J. (Rex) Burch**
                                                Federal ID 21615
                                                **BRUCKNER BURCH PLLC**
                                                11 Greenway Plaza, Suite 3025
                                                Houston, Texas 77046
                                                713-877-8788 – Telephone
                                                713-877-8065 – Facsimile
                                                rburch@brucknerburch.com

                                                **ATTORNEYS FOR PLAINTIFFS**

– 20 –

**CERTIFICATE OF SERVICE**

This is to certify that on May 22, 2025 a true and correct copy of the foregoing instrument was filed through the Court's electronic case filing system which will serve a copy of this document electronically on all counsel of record.

*/s/ William M. Hogg*
William M. Hogg